STATE OF NORTH CAROLINA v. MITCHELL WAYNE LANKFORD

No. 7630SC314

(Filed 6 October 1976)

1. Narcotics § 4.5; Criminal Law § 95— evidence admissible for restricted
   purpose — failure to request limiting instruction
      When evidence competent for one purpose only and not for an-
   other is offered, it is incumbent upon the objecting party to request
   the court to restrict the consideration of the jury to that aspect of the
   evidence which is competent; therefore, defendant in this prosecution
   for possession and sale of marijuana was not entitled to a limiting

State v. Lankford

instruction with respect to an SBI agent's testimony which corroborated testimony of an undercover SBI agent, since defendant failed to request such instruction.

**2. Narcotics § 4.5— jury instructions — summary of evidence sufficient**

In a prosecution for possession and sale of marijuana where the trial court failed to summarize the evidence before the jury retired but recalled the jury after approximately two minutes to give them additional instructions, the court's summary of the evidence, though brief, was sufficient to state the evidence to the jury in conformance with G.S. 1-180.

**3. Narcotics § 1— possession and sale of same marijuana — two separate offenses**

Defendant was properly tried and convicted for two separate offenses of possession and sale of the same marijuana. G.S. 90-95.

**4. Criminal Law § 89— testimony concerning defendant's alibi — cross-examination for impeachment**

The trial court in a prosecution for possession and sale of marijuana did not err in allowing the State to cross-examine a defense witness for the purpose of impeaching the witness's testimony regarding defendant's alibi.

**5. Constitutional Law § 33; Criminal Law § 88— silence of defendant's witness — cross-examination proper**

Since a defendant's privilege against self-incrimination does not extend to defendant's witnesses as well, the trial court did not err in allowing the State to cross-examine a defense witness as to why he had remained silent concerning defendant's alibi until the trial.

APPEAL by defendant from *Thornburg, Judge.* Judgment entered 14 November 1975 in Superior Court, HAYWOOD County. Heard in the Court of Appeals 26 August 1976.

Defendant was charged in a two-count indictment with (1) felonious sale and delivery of a controlled substance, to wit, marijuana, and (2) possession of marijuana with intent to sell and deliver. The jury returned a verdict of guilty on both counts, and the defendant was sentenced to a term of 30 months on the first count and two years suspended on the second count.

At trial, the State called two witnesses. The first witness, Howard Conard, testified, inter alia, that on 17 April 1975, he was employed as an undercover agent for the State Bureau of Investigation (S.B.I.) for the purpose of purchasing controlled substances in Haywood County. At approximately 8:15 p.m. on 17 April 1975, he went to "Greek's Place," a tavern located in the Town of Waynesville, and saw a man inside known to Conard as "Charley." Conard inquired as to whether

---

State v. Lankford

---

"Charley" had any marijuana for sale, whereupon "Charley" approached the defendant, who was sitting in a nearby booth, and began conversing with him. Defendant got up and went outside but returned shortly thereafter. Conard and "Charley" went over to the booth where defendant was seated, sat down, and for a few minutes discussed purchasing a bag of marijuana. After a while, defendant got up, nodded to Conard, and started for the exit once again. Conard also arose from his seat and went outside, followed by the defendant. Defendant walked to the rear of the parking lot, and stopped at a dark colored pickup truck. He took a set of keys from his pocket, unlocked the door to the truck, and reached inside, removing a brown paper bag. Defendant then reached in the bag and produced a plastic bag containing a green vegetable material, which he handed to Conard. Conard handed the defendant a twenty-dollar bill, and the two parted. Conard went to his home, wrote a report of the incident and called SBI Agent Dan Crawford. At approximately 11:05 p.m. that night, Conard met with Crawford at the Highway Patrol office in Clyde, filed his report and turned over the plastic bag.

Agent Crawford was the State's second witness. He testified, inter alia, that at approximately 11:05 p.m. on 17 April 1975, he met with Howard Conard at the Highway Patrol office in Haywood County. Over objection, Crawford then testified as to the substance of the meeting in which Conard told him of the incident involving the defendant.

It was stipulated that the substance in question consisted of 20.5 grams of marijuana, a Schedule VI controlled substance. Other relevant facts are set out in the opinion below.

*Attorney General Edmisten, by Assistant Attorney General Alfred N. Salley, for the State.*

*Creighton W. Sossoman for defendant appellant.*

MORRIS, Judge.

[1] Defendant assigns as error the failure of the trial judge to give limiting instructions to the jury as to the portions of Agent Crawford's testimony which related to his meeting with Conard. Agent Crawford's statements regarding what Conard told him on the night in question were clearly admissible to

corroborate Conard's version of the transaction involving the defendant. The record reveals that defendant made only a general objection to the introduction of the testimony and did not request a limiting instruction at trial. "It is a well recognized rule of procedure that when evidence competent for one purpose only and not for another is offered it is incumbent upon the objecting party to request the court to restrict the consideration of the jury to that aspect of the evidence which is competent." *State v. Ray*, 212 N.C. 725, 729, 194 S.E. 482, 484 (1938); Stansbury's N. C. Evidence, § 79 (Brandis Revision 1973). Without a request therefor, defendant was not entitled to a limiting instruction. This assignment of error is overruled.

[2]  Defendant's next assignment of error relates to the court's instructions to the jury. In the initial portion of the charge, the judge instructed as to the law but failed to summarize the evidence before the jury retired. Apparently realizing his omission, the judge recalled the jury after approximately two minutes had passed and then gave them additional instructions. During these supplementary instructions the judge recited the evidence as follows:

> " . . . the State has offered evidence which it contends tends to show, that on the 17th of April 1975, Officer Conard went to the Greek's Place, here in Haywood County, and while there he met the defendant and bought from him a quantity of marijuana from the sum of $20.00. On the other hand, as the Court recalls, the defendant has offered evidence which he contends tends to show that on the 17th of April, 1975, he was not at the Greek's Place; that he never sold any marijuana to Howard Conard or anyone else, and had never sold or engaged in the sale of marijuana."

Immediately preceding this, the court told the jury:

> "Members of the jury, you were brought back from the jury room for the purpose of additional instructions. Under the laws of this State it is required that the Judge give you at least a brief summary of the evidence and then apply the law to that evidence as the Court recalls that evidence to be. Now, at this point, I simply want to give you my recollection of what a part of the evidence offered by the parties tends to show, but only to the extent necessary to enable me to explain or apply the applicable law."

Defendant maintains that the charge was insufficient on the ground that the jury was instructed only as to the contentions of the parties. It is true that North Carolina has held that the judge, in his instructions to the jury, must recite the evidence and may not rely solely on the contentions of the parties. *Faison v. Trucking Co.,* 266 N.C. 383, 146 S.E. 2d 450 (1966) ; *Bulluck v. Long,* 256 N.C. 577, 124 S.E. 2d 716 (1962). However, although the trial judge used language which suggests he instructed only as to the parties' contentions, the record reveals that he then went further and did in fact review the evidence presented at trial. The record further reveals that the court specifically instructed the jury that the next ensuing instructions would be his recollection of the evidence. G.S. 1-180 does not require that the trial judge state all the evidence to the jury, but only such evidence "to the extent necessary to explain the application of the law thereto. . . . " We hold that the recitation of the evidence here, though brief, was sufficient to state the evidence to the jury in conformance with G.S. 1-180.

Defendant further contends that the bifurcated instructions were so disorganized and disjointed that the jury was confused to the prejudice of the defendant. The first portion of the charge, standing alone, did not contain a recital of the evidence as required by G.S. 1-180. However, a charge to the jury must be read and considered in its entirety and not in detached fragments. *Gregory v. Lynch,* 271 N.C. 198, 155 S.E. 2d 488 (1967). We believe that the charge as a whole contained a statement of the evidence to the extent necessary to explain the application of the law arising thereon. Furthermore, the charge read as a whole was sufficiently coherent and no prejudice resulted to the defendant. "An inaccuracy in the instruction will not be held prejudicial error when it is apparent from the charge, construed contextually, that the jury could not have been misled." *Houston v. Rivens,* 22 N.C. App. 423, 427, 206 S.E. 2d 739, 742 (1974). Accordingly, defendant's assignments of error relating to the jury instructions are overruled.

[3] Defendant next argues that, despite the statutory designation of separate and distinct offenses (G.S. 90-95), the two counts of sale of marijuana and possession of marijuana for sale cannot be separate and distinct offenses where, as here, the same evidence is used to convict on each count; and, further, that because there was no separate evidence of possession with intent to distribute, defendant's motions to dismiss and to set

aside the verdict as to that count should have been allowed. The Supreme Court, in *State v. Cameron,* 283 N.C. 191, 195 S.E. 2d 481 (1973), effectively disposed of this contention. There the Court (at 199) noted the defendant's contention in *State v. Chavis,* 232 N.C. 83, 59 S.E. 2d 348 (1950), "that it is not competent to find the defendant guilty of two offenses and fix separate punishments therefor when the facts constituting the two purported crimes are identical, the possession being physically necessary to the act of transportation." The Court quoted from the opinion of Justice Seawell:

> "Two things will help us in our thinking: we are not dealing with common law crimes but with statutory offenses; and not with a single *act* with two criminal labels but with *component transactions* violative of distinct statutory provisions denouncing them as crimes. Neither in fact nor law are they the same. *State v. Midgett,* 214 N.C. 107, 198 S.E. 613. They are not related as different degrees or major and minor parts of the same crime and the doctrine of merger does not apply. The incidental fact that possession goes with the transportation is not significant in law as defeating the legislative right to ban both or either. When the distinction between the offenses is considered in the light of their purpose, vastly different social implications are involved and the impact of the crime of greater magnitude on the attempted suppression of the liquor traffic is sufficient to preserve the legislative distinction and intent in denouncing each as a separate punishable offense."

The sale of a controlled substance is a specific act and occurs only at one specific time. However, the possession of that controlled substance with the intent to sell it is a continuing offense from the time it was unlawfully obtained until the time the possessor divests himself of the possession. *State v. Cameron, supra.* The fact that a sale occurred was sufficient evidence for the jury to infer that defendant had possessed the marijuana with intent to sell it, particularly in view of the evidence that the marijuana was in defendant's truck, that he went to the truck, took the keys from his pocket, unlocked the door, and took from the truck a paper bag from which he withdrew a plastic bag containing the marijuana which he sold to the agent. He could have possessed the marijuana for an hour or less or a week or more. The length of time is immaterial. Nor did he hand the agent the paper bag. He retained the brown

paper bag and gave the agent only the plastic bag of marijuana which he took from the brown paper bag.

These contentions of defendant are without merit.

[4]   Defendant's final assignment of error relates to the State's cross-examination of defense witness Jack Harris. Harris testified, inter alia, that he had been defendant's roommate on the night in question, that he had borrowed and was in possession of defendant's truck at the time the sale of marijuana took place, and that he had left defendant at home studying while he borrowed defendant's truck. On cross-examination, the State asked Harris whether he had told the authorities of defendant's alibi at any time prior to trial. The court allowed the witness to answer, over objection, and defendant contends that the admission of this testimony constituted prejudicial error. Again, we disagree.

The questions to which defendant objected were intended to impeach the witness's testimony regarding defendant's alibi. Questions designed to impeach the witness, if relevant, may cover a wide range and are permissible within the discretion of the court. *State v. Dawson,* 278 N.C. 351, 180 S.E. 2d 140 (1971) ; Stansbury's N. C. Evidence, § 38 (Brandis Revision 1973). "The silence of the witness in the face of another person's statement, or any other conduct inconsistent with his testimony may be used to discredit him." Stansbury's N. C. Evidence, § 46 (Brandis Revision 1973). The witness's failure to inform the authorities of facts which would have tended to absolve his roommate of any criminal wrongdoing was a proper subject for impeachment by the State during cross-examination. Accordingly, we find no abuse of discretion by the trial judge in permitting this line of questioning.

[5]   Even though the line of questioning was proper for impeachment purposes, defendant further contends that the admission of the testimony regarding the witness's previous silence constitutes reversible error and cites *State v. Williams,* 288 N.C. 680, 220 S.E. 2d 558 (1975), as authority for this position. In *Williams,* the North Carolina Supreme Court held that the State could not offer defendant's silence during the police investigation as evidence of his guilt or for the purpose of impeaching defendant as a witness. This holding was based on the defendant's right against self-incrimination as guaranteed by the Fifth and Fourteenth Amendments to the United States Con-

stitution and by Article I, Section 23, of the North Carolina Constitution. Defendant urges us to extend the rule of *Williams* to the instant case. Here, however, the questions were being asked not of the defendant, but of the defendant's witness. Obviously, the defendant's privilege against self-incrimination does not extend and apply to defendant's witnesses as well. Therefore, this assignment of error is overruled.

No error.

Judges VAUGHN and CLARK concur.