STATE OF NORTH CAROLINA v. ROBERT HENRY FINK

No. 8819SC323

(Filed 17 January 1989)

1. Criminal Law § 92.1— trafficking and conspiracy—joinder of defendants

The trial judge did not abuse his discretion by joining defendant and his two brothers for trial for conspiring to traffic in cocaine and trafficking in cocaine where statements made by defendant's brothers, allegedly during and in furtherance of the conspiracy, would have been admissible against each of the defendants whether they were tried separately or jointly. There was no error in permitting the State to file a written motion for joinder of defendants the day after the State orally argued the motion at the pretrial motions hearing because a written motion for joinder of defendants may be made at any time prior to trial and need not be written if made at a hearing; furthermore, there is no question that defendant had notice of the State's intention to join the defendants for trial and defendant can therefore show no prejudice from the timing of the State's motion.

2. Conspiracy § 5.1— conspiracy to traffic in cocaine—unsanitized statements of co-conspirators—admissible

The trial court did not err in a prosecution for conspiracy to traffic in cocaine and trafficking in cocaine by admitting codefendants' statements without removing all references to defendant where the statements were made during the course of and in furtherance of the conspiracy and were therefore admissible under N.C.G.S. § 8C-1, Rule 801(d)(E). A defendant is not entitled to have his co-conspirators' incriminating statements sanitized pursuant to N.C.G.S. § 15A-927(c)(1) when the statements are admissible against him whether he is tried separately or jointly.

3. Conspiracy § 5.2— statements of co-conspirators—admissibility—independent evidence of conspiracy

The trial court did not err in a prosecution for trafficking in cocaine and conspiracy to traffic in cocaine by admitting statements of co-conspirators without a *prima facie* showing of conspiracy before the statements were admitted. Statements of co-conspirators are admissible against other members of the conspiracy so long as a *prima facie* case of conspiracy is established independently of the statements sought to be admitted.

State v. Fink

**4. Criminal Law § 73.2— conspiracy to traffic in narcotics—statements of co-conspirator after sale—not inadmissible hearsay**

In a prosecution for conspiracy to traffic in cocaine and trafficking in cocaine, the Court of Appeals summarily rejected defendant's argument that the statement of a conspirator to a buyer to "be careful with that much cocaine" occurred after the objective of the conspiracy was achieved and was therefore inadmissible hearsay.

**5. Criminal Law § 97.2— refusal to allow defendant to reopen case—no abuse of discretion**

The trial court did not abuse its discretion in a prosecution for trafficking in cocaine and conspiracy to traffic in cocaine by refusing defendant's motion to reopen his case where a mistrial had been declared as to the other two defendants on a Friday, defendant rested his case shortly afterwards, and defendant moved on Monday to reopen the case so that he could examine the codefendants. If defendant was taken by surprise by the mistrial, he should have moved for a continuance or a recess; the court would not presume that the codefendants planned not to testify and were therefore unavailable as witnesses; and the mistrial did not alter the admissibility of the co-conspirators' statements.

**6. Conspiracy § 7— instructions on separate conspiracies—overlapping conspiracies—one offense**

The trial judge erred by charging the jury as to two separate conspiracies to traffic in cocaine where the two conspiracies were so overlapped as to comprise one continuing conspiracy. The first conspiracy charge was the operative one, with the second merely a continuation of the first, and the second conspiracy conviction was therefore vacated.

**7. Narcotics § 6— trafficking in cocaine—money in defendant's shirt pocket when arrested—improperly seized**

The trial court erred in a prosecution for trafficking in cocaine and conspiracy to traffic in cocaine by ordering the forfeiture of $1,485 in unmarked currency seized from defendant's shirt pocket when he was arrested. No evidence was presented at trial to indicate that the unmarked currency was linked to a drug transaction rather than to defendant's occasional employment as a welder. N.C.G.S. § 90-112(2).

**8. Criminal Law § 138.9— consecutive sentences—credit for time served**

Defendant was not denied his statutory right to credit for time served where he was sentenced to 20 years on a cocaine trafficking charge, with 220 days credit for time served while awaiting judgment, and to 14 years on consolidated conspiracy charges, to begin at the expiration of the trafficking sentence. Consecutive sentences are treated as one sentence for purposes of providing credit for time served. N.C.G.S. § 15-196.2.

APPEAL by defendant from *James A. Beatty, Jr., Judge.* Judgment entered 28 September 1987 in Superior Court, ROWAN County. Heard in the Court of Appeals 25 October 1988.

*Attorney General Lacy Thornburg, by Assistant Attorney General Floyd M. Lewis, for the State.*

*Goodman, Carr, Nixon & Laughrun, by Theofanis X. Nixon, for defendant-appellant.*

BECTON, Judge.

Defendant Robert Henry Fink ("Fink") was convicted of (1) trafficking in cocaine, and (2) conspiracy to traffic in cocaine. The central question on appeal is the effect of certain statements made by Fink's brothers — his codefendants — which were admitted at trial as statements made during and in furtherance of a conspiracy. Fink also contends that the trial judge erred in refusing to reopen the evidence, charging the jury as to two separate conspiracies, ordering forfeiture of $1,485 in cash seized at the time of arrest, and denying Fink credit for time served. We vacate the order to forfeit the $1,485 and vacate one conspiracy conviction. The remaining conspiracy conviction is remanded for resentencing. In all other respects, the trial was without error.

I

The relevant facts are as follows. Defendant, Robert Henry Fink ("Fink"), a paraplegic, sold cocaine out of the house where he lived with his two brothers, Jerome Herman Fink ("Jerry") and James Luther Fink ("Luke"). The house was secured by a four foot high chain link fence with an electronic gate controlled from inside the house. Three attack-trained doberman pinschers protected the house, and wrought iron bars covered the doors and windows. Cocaine was sold only to select customers, one of whom was Jimmy Darrell Bonds ("Bonds"), the unsuspecting middleman in an undercover SBI investigation.

Over a period of months, SBI Agent Terry Johnson ("the agent") purchased varying quantities of cocaine from Fink through Bonds. On 19 February 1987, the agent gave Bonds $5,800, in marked bills, to purchase 2.5 ounces of cocaine from Fink. Bonds normally dropped the agent off several hundred yards from the house before getting the cocaine; however, on this occasion, the agent insisted on accompanying Bonds to Fink's house "because of the amount of money" involved. Bonds and the agent went to Fink's home three times that evening. Each time,

Bonds parked his car outside the gate. The agent slumped down in the front seat and waited.

On the first trip, Luke walked out of the house toward Bonds. The agent heard Luke tell Bonds that Fink was at the hospital receiving treatment for a burn, and *to come back later since that much cocaine could be sold only when Fink was there.* Luke told Bonds to call first before coming back. When Bonds and the agent returned an hour later, Jerry came to the door and told Bonds that Fink was not home yet and to check back again.

On the third visit, Fink was at the house. Jerry came to the back door, and made the gate slide open for Bonds. From his position in the car, the agent watched Bonds enter the house; the agent saw Jerry and Fink at the doorway; and he saw Luke walk behind them. Bonds left the house after several minutes. As Bonds was leaving, the agent heard Jerry tell Bonds to "*be careful with that much cocaine.*" Bonds and the agent then drove to Bonds' house, where Bonds delivered the cocaine to the agent.

Shortly thereafter, the agent obtained a search warrant, and, in the early morning hours of 20 February 1987, law enforcement officers conducted a raid of Fink's home. Fink was found in his room, where 44 grams of cocaine and $54,000 in cash—including the $5,800 in marked bills—was discovered in a drawer. An additional $1,485 in cash (unmarked) was found in the pocket of a shirt hanging on the door. Jerry was found in the bathroom, where agents discovered more than 300 grams of cocaine concealed in the toilet tank, and cocaine residue in the toilet bowl and bathtub. Cocaine paraphernalia consisting of a grinder, mirror, and straw were found in Jerry's room. A cache of weapons was found in Fink's room and in Jerry's room.

Charges were brought against Fink, his brothers, and Bonds. Fink was charged with trafficking in cocaine by possession. He was also charged with conspiring, on 19 February 1987, with Jerry, Luke, and Bonds to traffic in cocaine by possessing more than 28 but less than 200 grams of cocaine. A separate charge was brought against him for conspiring, on 20 February 1987, with Jerry and Luke to traffic in cocaine by possessing more than 200 but less than 400 grams of cocaine.

Over objection, Fink and his brothers were tried jointly. Fink took the stand and admitted being a drug dealer. Jerry and Luke

did not testify. The agent testified, however, over objection, regarding the statements he heard Jerry and Luke make to Bonds.

Certain incompetent testimony, prejudicial to Jerry and Luke, was elicited at trial. As a result, a mistrial was declared as to them; the case against Fink continued. Shortly after the mistrial, Fink rested his case. Following a weekend recess, Fink moved to reopen the evidence. That motion was denied.

The judge charged the jury on Fink's alleged offenses of (1) conspiring with Bonds to traffic in cocaine on 19 February 1987 (Jerry and Luke were eliminated from this offense); (2) conspiring with Jerry and Luke to traffic in cocaine on 20 February 1987; and (3) trafficking in cocaine.

Fink was found guilty of all counts, and was sentenced to 14 years on the two conspiracy charges (consolidated for judgment), and to 20 years on the trafficking charge. He was fined a total of $200,000, and the cash seized at his home was ordered forfeited to the State.

## II

### A.  *Joinder of Co-Conspirators*

[1]  Fink first contends that the trial judge erred in joining him and his brothers for trial. We disagree.

Charges against two or more defendants may properly be joined for trial when—as here—the offenses charged are "part of the same act or transaction" or are "so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others." N.C. Gen. Stat. Sec. 15A-926(b)(2) (1988). Charges may also be joined when the offenses "[w]ere part of a common scheme or plan." *Id.* The general rule as to joint trial of co-conspirators was stated in *State v. Battle*, 267 N.C. 513, 519, 148 S.E. 2d 599, 603 (1966): "Ordinarily, where defendants are charged with a conspiracy—an agreement whereby they became partners in crime—they should be tried together unless some sound reason is made to appear which would require a severance."

Multiple defendants may not be jointly tried if joinder will impair the "fair determination of . . . guilt or innocence" of any of the defendants. N.C. Gen. Stat. Sec. 15A-927(c)(2) (1988). *See State*

*v. Green*, 321 N.C. 594, 600, 365 S.E. 2d 587, 591 (1988), *cert. denied*, --- U.S. ---, 109 S.Ct. 247 (1988). Ultimately, the decision whether to join defendants for a consolidated trial is within the sound discretion of the trial judge, and will not be overturned on appeal absent an abuse of discretion. *State v. Carson*, 320 N.C. 328, 335, 357 S.E. 2d 662, 666-67 (1987). The test for determining whether a trial judge abused his discretion in joining defendants for trial is "whether the conflicts in the defendants' respective positions at trial [are] of such a nature that, considering all of the evidence in the case, defendant was denied a fair trial." *Green*, 321 N.C. at 601, 365 S.E. 2d at 591.

Fink maintains that joinder with two of his alleged co-conspirators was an abuse of discretion. However, Fink fails to show any conflict in the respective positions of the defendants, or any other sound reason for us to conclude that joinder denied him a fair trial.

We reject Fink's assertion that the judge abused his discretion by failing to consider the prejudicial effect of the statements made by Fink's codefendant brothers before denying the motion objecting to joinder. *See* N.C. Gen. Stat. Sec. 15A-927(c)(3) (1988) (judge *may* consider such statements in deciding whether to join defendants for trial). As will be discussed below, those statements, allegedly made during and in furtherance of the conspiracy, would have been admissible against—and as damaging to —each of the defendants whether they were tried separately or jointly. *See* N.C. Gen. Stat. Sec. 8C-1, R. Evid. 801(d)(E) (1988); *accord United States v. Curry*, 512 F. 2d 1299, 1302 (4th Cir. 1975), *cert. denied*, 423 U.S. 832, 46 L.Ed. 2d 50 (1975) (admission of co-conspirator's incriminating statements did not warrant severance since statements would be equally admissible at separate trial). Unless "joinder of [codefendants] . . . result[s] in the admission of evidence harmful to the defendant *which would not have been admissible in a severed trial* . . . [the defendant is] not prejudiced by the joinder." *State v. Lowery*, 318 N.C. 54, 61, 347 S.E. 2d 729, 735 (1986) (emphasis added).

We reject Fink's further argument that the State's motion for joinder was improperly made. Fink asserts that the State should not have been permitted to file a written motion for joinder of defendants the day after the State orally argued the

motion at the pretrial motions hearing. A written motion for joinder of defendants may be made at *any* time prior to trial. Moreover, the motion need not be *written* if made at a hearing, and, in the judge's discretion, the motion may be made orally even at the beginning of trial. *See* N.C. Gen. Stat. Secs. 15A-926(b)(2), 15A-951(a), 15A-952(b), (f) (1988); *State v. Slade*, 291 N.C. 275, 281-82, 229 S.E. 2d 921, 926 (1976). Furthermore, a motion objecting to joinder argued by Luke and joined by Fink, was made at the same pretrial hearing, which occurred four months before trial. There is thus no question that Fink had notice of the State's intention to join the defendants for trial, and, therefore, he can show no prejudice by the timing of the State's motion.

In light of the foregoing, we find no error in joining Fink with his brothers for trial.

B. *Co-Conspirators' Incriminating Statements Admissible Under Rule 801(d)(E) Need Not Be "Sanitized"*

[2] Fink next contends that the trial judge erred by failing to order the codefendant brothers' statements "sanitized," removing all references to Fink. Fink asserts that this is the result mandated by *Bruton v. United States*, 391 U.S. 123, 20 L.Ed. 2d 476 (1968), and by N.C. Gen. Stat. Sec. 15A-927(c)(1). In *Bruton*, the Supreme Court held that, in a joint trial, introduction of a non-testifying codefendant's out-of-court statement, which implicated the defendant *but was inadmissible against him*, violated the defendant's Sixth Amendment right to confrontation. 391 U.S. at 126, 20 L.Ed. 2d at 479. The *Bruton* rule was adopted in North Carolina through enactment of Section 15A-927(c)(1).

Neither the *Bruton* rule nor Section 15A-927(c)(1) apply when statements are otherwise *admissible* against a defendant under the rules of evidence. *See State v. Collins*, 81 N.C. App. 346, 349, 344 S.E. 2d 310, 313 (1986), *appeal dismissed*, 318 N.C. 418, 349 S.E. 2d 601 (1986); *State v. Brewington*, 80 N.C. App. 42, 48, 341 S.E. 2d 82, 86 (1986), *disc. rev. denied*, 317 N.C. 708, 347 S.E. 2d 449 (1986). *See also Bruton*, 391 U.S. at 128, 20 L.Ed. 2d at 480-81, n.3; N.C. Gen. Stat. Sec. 15A-927(c)(1). In our view, the statements made by Jerry and Luke to Bonds were statements made "during the course and in furtherance of the conspiracy" to traffic in cocaine, and therefore were admissible against Fink under Rule 801(d)(E) of the rules of evidence. *See* N.C. Gen. Stat. Sec. 8C-1, R.

Evid. 801(d)(E) (1988); *Collins,* 81 N.C. App. at 349, 344 S.E. 2d at 313; *Brewington,* 80 N.C. App. at 48, 341 S.E. 2d at 86. A defendant is not entitled to have his co-conspirators' incriminating statements sanitized pursuant to Section 15A-927(c)(1) when, as here, the statements are admissible against him whether he is tried separately or jointly. *See State v. Sidden,* 315 N.C. 539, 551, 340 S.E. 2d 340, 348 (1986). Therefore, Fink's contention is without merit.

C. *Prima Facie Case of Conspiracy*

[3] Fink next asserts that the judge erred in admitting his brothers' statements to Bonds under Rule 801(d)(E) because, he argues, there was no *prima facie* showing of conspiracy before the statements were admitted. We reject this contention.

Statements of conspirators are admissible against other members of the conspiracy so long as a *prima facie* case of conspiracy is established *independently* of the statements sought to be admitted. *State v. Tilley,* 292 N.C. 132, 138, 232 S.E. 2d 433, 438 (1977); *Brewington,* 80 N.C. App. at 48-49, 341 S.E. 2d at 86. The judge, in his discretionary authority over the presentation of evidence, may admit the statements subject to a later showing of conspiracy. *State v. Albert,* 312 N.C. 567, 576, 324 S.E. 2d 233, 238 (1985); *Brewington,* 80 N.C. App. at 48-49, 341 S.E. 2d at 86-87.

Evidence of a conspiracy may be circumstantial. *Collins,* 81 N.C. App. at 350, 344 S.E. 2d at 313. A conspiracy " 'may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, . . . point unerringly' " to its existence. *State v. Rozier,* 69 N.C. App. 38, 49, 316 S.E. 2d 893, 901 (1984), *cert. denied,* 312 N.C. 88, 321 S.E. 2d 907 (1984) (citations omitted). An express agreement need not be shown; evidence of a mutual, implied understanding is sufficient. *Collins,* 81 N.C. App. at 350, 344 S.E. 2d at 313-14.

In light of these principles, we conclude, without reiterating the evidence, that a mutual, implied understanding existed among the brothers to commit the unlawful act of trafficking in cocaine. Viewing the evidence in a light most favorable to the State, *see id.,* we hold that the evidence was sufficient, independent of the statements, to establish a *prima facie* case of conspiracy. Therefore, the statements were properly admitted in evidence.

[4] We summarily reject Fink's argument that Jerry's statement to "be careful with that much cocaine" occurred after the objective of the conspiracy was achieved, and therefore was inadmissible hearsay. *See State v. Gary,* 78 N.C. App. 29, 37, 337 S.E. 2d 70, 76 (1985) ("statement occurred close enough in time to the criminal acts themselves to be admissible").

We now turn to Fink's remaining assignments of error.

### III

[5] On a Friday, shortly after the mistrial was declared as to Jerry and Luke, Fink rested his case. The trial resumed the following Monday. Fink then moved to reopen the evidence to allow him to examine Jerry and Luke, witnesses he contends were previously unavailable to him, to refute the agent's testimony regarding the statements made to Bonds. Fink contends that denial of that motion was reversible error. We disagree.

The decision whether to reopen a case after both parties have rested to permit additional evidence is left to the sound discretion of the trial judge. *See State v. Mutakbbic,* 317 N.C. 264, 273-74, 345 S.E. 2d 154, 158 (1986); *State v. Gibson,* 18 N.C. App. 305, 307, 196 S.E. 2d 564, 566 (1973). That determination will not be disturbed on appeal "unless it is 'manifestly unsupported by reason,' . . . or 'so arbitrary that it could not have been the result of a reasoned decision.' " *Mutakbbic,* 317 N.C. at 273-74, 345 S.E. 2d at 158-59 (citations omitted).

In the case before us, there was no "manifest abuse of discretion" warranting reversal. *See Gibson,* 18 N.C. App. at 307, 196 S.E. 2d at 566. If Fink was taken by surprise by the mistrial, as he now contends, he should have moved for a continuance or a recess instead of resting his case. He voluntarily rested at a time when his former codefendants were available as witnesses. Furthermore, we do not presume that Jerry and Luke planned not to testify, and therefore were unavailable as witnesses. Finally, at the time the trial judge ruled on the admissibility of the hearsay statements, he ruled appropriately; mistrial did not alter the statements' admissibility. Thus, there was no urgent necessity to reopen the evidence after a weekend recess to permit Fink's brothers to refute the statements, especially since Fink had that

opportunity before resting his case. We find no error in denying the motion to reopen the evidence.

## IV

**[6]** Fink contends that the trial judge erred in charging the jury as to two separate conspiracies. We agree, and modify the judgment accordingly.

Although the offense of conspiracy is complete upon formation of an unlawful agreement, the offense continues until the conspiracy is accomplished or is abandoned. *State v. Medlin*, 86 N.C. App. 114, 122, 357 S.E. 2d 174, 179 (1987). One conspiracy "may, and often does, consist of a series of different [substantive] offenses" occurring over a period of time. *Id.* When a series of acts or agreements constitutes a single conspiracy, a defendant cannot be prosecuted on *multiple conspiracy* charges. *Id.* at 121, 357 S.E. 2d at 178 (citing *United States v. Kissel*, 218 U.S. 601, 54 L.Ed. 1168 (1910)). Of course, a defendant may still be charged with each separate substantive offense committed in furtherance of the single conspiracy. *See id.*

When the State elects to charge separate conspiracies, it is required to "prove not only the existence of [more than one] agreement[,] but also that [the agreements] were separate." *Rozier*, 69 N.C. App. at 53, 316 S.E. 2d at 902. No simple test exists to determine whether single or multiple conspiracies have been shown in a particular case. *Medlin*, 86 N.C. App. at 122, 357 S.E. 2d at 179. Some factors relevant in making that determination include the time intervals, participants, objectives, and number of meetings. *Id.* However, a single conspiracy is not transformed into multiple conspiracies simply because its members vary occasionally, and the same acts in furtherance of it occur over a period of time. *See id.* (single conspiracy should have been charged when the objectives of the conspiracy did not change during four-month life of conspiracy, and the participants were the same in three of ten substantive offenses committed in furtherance of it); *accord State v. Overton*, 60 N.C. App. 1, 13, 298 S.E. 2d 695, 702-03 (1982), *disc. rev. denied*, 307 N.C. 580, 299 S.E. 2d 652 (1983) ("that [four to sixteen] participants entered and exited the conspiracy at various times [over four years] did not convert one conspiracy into several").

In our view, the two conspiracies in the case before us were so overlapped as to comprise one continuing conspiracy. The conspiracies charged occurred within hours of each other, one on the evening of 19 February, and the other on the morning of 20 February 1987. The alleged participants in the first conspiracy were Fink, his brothers, and Bonds; the participants in the second were Fink and his brothers. Although the amount of cocaine varied in the first and second alleged conspiracies, the objective was the same: to traffic in cocaine. Moreover, inconsistent with its position on appeal, the State argued throughout the trial that there was a "*continuing conspiracy*" among the defendants.

Because there was evidence of only one ongoing conspiracy, both of Fink's conspiracy convictions cannot stand. *See State v. Hicks*, 86 N.C. App. 36, 42, 356 S.E. 2d 595, 598 (1987). We conclude that the first conspiracy charge against Fink is the operative one for purposes of establishing that he conspired to traffic in cocaine. *See Medlin*, 86 N.C. App. at 123, 357 S.E. 2d at 179; *Rozier*, 69 N.C. App. at 54, 316 S.E. 2d at 903 (earlier of conspiracy convictions should stand when multiple conspiracies were charged but only single conspiracy was proved). The alleged conspiracy of 20 February was merely a *continuation* of the original conspiracy and does not support the additional conspiracy charge. Therefore, we vacate the second of Fink's conspiracy convictions, the 20 February 1987 charge (No. 87CRS1454). Case No. 87CRS2127 is remanded for resentencing. *Cf. State v. Agudelo*, 89 N.C. App. 640, 644, 366 S.E. 2d 921, 924 (1988), *disc. rev. denied and appeal dismissed*, 323 N.C. 176, 373 S.E. 2d 115 (1988) (no need to remand for resentencing in remaining conspiracy case when minimum sentence was imposed for each conviction and sentences were to run concurrently).

## V

[7] We agree with Fink's next contention that the trial judge erred in ordering forfeiture of the unmarked currency, in the amount of $1,485, seized from Fink's shirt pocket.

"All money . . . which [is] acquired, used, or intended for use, in selling [or] purchasing . . . a controlled substance" is subject to forfeiture. N.C. Gen. Stat. Sec. 90-112(2) (1985). However, mere possession of currency in close proximity to narcotics does not warrant forfeiture. *State v. Teasley*, 82 N.C. App. 150, 167, 346

S.E. 2d 227, 237 (1986), *disc. rev. denied and appeal dismissed*, 318 N.C. 701, 351 S.E. 2d 759 (1987). No evidence was presented at trial to indicate that the unmarked money was linked to a drug transaction rather than to Fink's occasional employment as a welder. Therefore, we vacate the portion of the order forfeiting the $1,485.

## VI

[8] Fink last contends that he was denied his statutory right to credit for time served. Fink was sentenced to 20 years on the trafficking charge, and was given 220 days credit for time served while awaiting judgment. He was sentenced to 14 years on the consolidated conspiracy charges, to begin at the expiration of the trafficking sentence.

Section 15-196.2 provides that consecutive sentences are treated as one sentence for purposes of providing credit for time served; "the creditable time shall not be multiplied by the number of consecutive offenses for which a defendant is imprisoned." N.C. Gen. Stat. Sec. 15-196.2 (1983). Thus, Fink's contention is without merit.

## VII

In summary, we vacate that portion of the order forfeiting the $1,485 seized from Fink's shirt pocket. We also vacate Fink's conviction of conspiracy to traffic in cocaine on 20 February 1987 (No. 87CRS1454) and remand case No. 87CRS2127 for resentencing. We find no other prejudicial error.

Judges EAGLES and GREENE concur.